IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF MISSISSIPPI
EASTERN DIVISION

DEREK HARRIS, by and through his parents
and next friends, ROBERT and PHYLLIS HARRIS
and, PHYLLIS HARRIS, Individually                                       PLAINTIFFS

V.                                                    CIVIL ACTION NO. 1:09CV19-B-D

PONTOTOC COUNTY SCHOOL DISTRICT and
KEN ROYE, Individually and in His Official Capacity
as Superintendent of Pontotoc County School District                    DEFENDANTS

## MEMORANDUM OPINION

This cause comes before the court upon the defendants' motion for summary judgment. Upon due consideration of the motion, response, exhibits, and supporting and opposing authority, the court is ready to rule.

Factual and Procedural Background

The plaintiffs, Phyllis Harris and her son Derek Harris, bring this action against the Pontotoc County School District and its superintendent Ken Roye asserting that Phyllis Harris' First Amendment rights were violated when the defendants discharged her because she spoke on behalf of her son after he was suspended for three days and sent to alternative school for alleged violations of the school's computer policy. Mrs. Harris, who was a secretary at South Pontotoc Elementary, also brings a claim of interference with employment contract against defendant Roye in his individual capacity. Derek Harris brings separate claims asserting that the school district violated his due process rights and defamed him.

Derek Harris was an eighth grade student at South Pontotoc Middle School in the fall semester of 2008 when he and a classmate sent an email to the school's computer teacher, Terina Dexter, indicating that they had hacked into the school district computer network but also stating

that they were only joking. A few weeks later Derek sent an email to Dexter indicating that the school district "was vulnerable to a DOS attack." Dexter informed the school's "technology coordinator," Melanie Kidd, of the communications. Kidd then informed the middle school principal, Scotty Collins, about the matter, and the email communications were discussed with Derek.

A few days later Roye learned of the emails and asked Kidd to investigate further into the matter. Kidd generated "user queries" from the computer assigned to Phyllis Harris and discovered queries related to hacking, "key loggers," and denial of service attacks. Derek admitted that he ran these searches and that he was aware that this was a violation of the school's computer policy.

Kidd subsequently contacted the Mississippi Department of Education ("MDE") and requested that a computer analyst be sent to check the security of the school's computer network. MDE sent Glen Popeil, a network engineer, to examine the school's computer system. On the day of Popeil's arrival, Kidd informed Roye that the school was experiencing serious computer problems. That same day, Derek sent an email from his mother's computer to Chris Garrard, a computer technician at the school, with the subject of "I need some help with a batch file." The email included a question about denial of service attacks similar to what the school district believed was causing problems with the system. As an initial remedial measure, the school took Phyllis Harris' computer off the system. Once Harris' computer was removed from the network, the problems with the school's computer system ceased.

The plaintiffs assert that at this point, Kidd, Popeil, Garrard, and Collins proceeded to Derek's class "where they ordered Derek against the wall and removed the computer he was

2

using." Derek was then removed from class and taken to another classroom whereupon the four individuals interrogated Derek. The plaintiffs allege that "Derek was told his mother could lose her job, he could go to jail, his plans for college were over, and that Derek's father would be responsible for all damage Derek had caused." Derek was also searched at this time. He was found in possession of a computer disk with a demonstration key logger program on it. The plaintiffs contend that Derek had the disk because Collins' wife, the school counselor, had asked Derek about key loggers and what function they served. According to the plaintiffs, when Derek told Collins who had asked him about the key logger, Collins asked if Derek was helping his wife spy on him. Collins asserts that his wife denied Derek's story.

Popeil ultimately determined, as stated in his report, that Derek "was either not the originator of the DOS attack or was unwilling to provide any further information." It was determined, however, that Derek nevertheless violated the "Student Acceptable Usage Policy," and those violations were discussed with him. Among the violations alleged were "engaging in practices that threaten the network," "using others' password[s]," and "possession of hacking materials." Derek was suspended from school for three days and sent to alternative school for forty-five days for violating the school district's computer policy.

Phyllis Harris complained to Roye about what she considered unfair treatment of her son and asked him to instruct the teachers to stop discussing Derek and the alleged "hack" in front of students. Roye replied that he could not stop his employees from talking about the subject. Phyllis was subsequently moved from her secretarial position to an assistant teacher position. When Phyllis protested this job change and admittedly called Roye "a liar," Roye terminated her. Her termination was later approved by the school board.

The plaintiffs assert that Derek was denied due process, that he was defamed, and that Phyllis was wrongfully terminated in retaliation for her use of protected First Amendment speech. They further assert that defendant Roye tortiously interfered with Phyllis' employment contract. The defendants have moved for summary judgment on all claims.

## Standard of Review

A party is entitled to summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). On a motion for summary judgment, the movant has the initial burden of showing the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 325, 106 S. Ct. 2548, 2554, 91 L. Ed. 2d 265 (1986). If the movant makes such a showing, the burden then shifts to the non-movant to "go beyond the pleadings and by . . . affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" *Celotex Corp.*, 477 U.S. at 324, 106 S. Ct. at 2553, 91 L. Ed. 2d at 274 (quoting Fed. R. Civ. P. 56(c), 56(e)). Before finding that no genuine issue for trial exists, the court must first be satisfied that no rational trier of fact could find for the non-movant. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S. Ct. 1348, 1356, 89 L. Ed. 2d 538, 552 (1986).

## Analysis

*Due Process Claim*

"The Fourteenth Amendment forbids the State to deprive any person of life, liberty, or property without due process of law." *Goss v. Lopez*, 419 U.S. 565, 572 (1975). The procedural

4

protection afforded by the Fourteenth Amendment "is a safeguard of the security of interests that a person has already acquired in specific benefits. These interests – property interests – may take many forms." *Board of Regents of State Colleges v. Roth*, 408 U.S. 564, 576 (1972). The State of Mississippi, "[h]aving chosen to extend the right to an education to people of [Derek's] class generally . . . may not withdraw that right on grounds of misconduct absent fundamentally fair procedures to determine whether the misconduct has occurred." *See Goss*, 419 U.S. at 574. "It can hardly be argued that . . . students . . . shed their constitutional rights . . . at the schoolhouse gate." *Tinker v. Des Moines Indep. Community Sch. Dist.*, 393 U.S. 503, 506 (1969). "Suspension from school without some kind of notice and hearing may violate property and liberty interests." *Nevares v. San Marcos Consol. Indep. Sch. Dist.*, 111 F.3d 25, 26 (5th Cir. 1997) (citing *Goss*, 419 U.S. at 565).

The Fifth Circuit has held that a student's transfer to an alternative education program with stricter discipline does not deny access to public education and therefore does not violate a federally protected property or liberty interest. *Nevares*, 111 F.3d at 26. Thus, Derek's transfer to alternative school for forty-five days did not violate Derek's right to a public education.

Derek's short suspension prior to the alternative school transfer requires a slightly different analysis. *Goss*, referenced above, is "[t]he seminal United States Supreme Court case regarding procedural due process in school suspension cases." *Foster v. Tupelo Public Sch. Dist.*, 569 F. Supp. 2d 667, 672 (N.D. Miss. 2008). The *Goss* Court "outlined a two-step inquiry to determine whether procedural due process is implicated in school suspension cases." *Id.* First, the court must examine "the severity of the deprivation to determine if process applies." *Id.* Second, the court determines what process was required by the Constitution. *Id.* "In

5

deciding the severity of the deprivation, the Court defined a 'temporary suspension' as a suspension of ten days or less." *Id.* (citing *Goss*, 419 U.S. at 581). The *Goss* Court found that

> [s]tudents facing temporary suspension have interests qualifying for protection of the Due Process Clause, and due process requires, in connection with a suspension of 10 days or less, that the student be given oral or written notice of the charges against him and, if he denies them, an explanation of the evidence the authorities have and an opportunity to present his side of the story.

*Goss*, 419 U.S. at 581. The Court further held that the Due Process Clause in short suspension cases does *not* require hearings that "afford the student the opportunity to secure counsel, to confront and cross-examine witnesses supporting the charge, or to call his own witnesses to verify his version of the incident." *Id*. at 584.

Derek's suspension was only three days and therefore falls into the short, or temporary, suspension category as defined by the *Goss* Court. Derek admitted to having possession of a key logger program and to using his mother's school computer to send emails and attempt internet searches in violation of the school district's policy. Derek clearly and admittedly violated the district's policy, and the record reveals that both Derek and his parents were adequately informed of the accusations against Derek and the reasons for the disciplinary measures taken and were afforded an adequate opportunity to respond. This court finds that the defendants met the due process requirements set forth in *Goss*, and Derek's due process claim must fail.

*Defamation Claim*

The plaintiffs claim that Roye and/or the school district defamed Derek Harris because teachers openly indicated in front of students that he hacked or attempted to hack into the school's computer system. Derek presents only hearsay statements in support of this claim. "It is well established in the Fifth Circuit that assertions based on hearsay do not create genuine

6

issues of material fact which will defeat a motion for summary judgment." *Horace Slay Auto Sales v. General Motors Corp.*, 495 F. Supp. 415, 420 (S.D. Miss. 1980) (citing *Broadway v. City of Montgomery*, 530 F.2d 657, 661 (5th Cir. 1976)). Derek's defamation claim is unsupported by the record, and the defendants are entitled to judgment as a matter of law on said claim.

*First Amendment Claim*

Phyllis Harris asserts that the defendants violated her First Amendment right to free speech by terminating her employment in retaliation for her expression of support for her son regarding the school's decision to send him to alternative school. She claims that her protest, because it was an assertion of Derek's due process rights, is of public concern and therefore protected speech under the First Amendment.

A meritorious First Amendment retaliation claim has four elements: "(1) an adverse employment action; (2) speech involving a matter of public concern; (3) the employee's interest in speaking outweighs the employer's interest in efficiency; and (4) the speech must have precipitated the adverse employment action." *Kennedy v. Tangipahoa Parish Library Bd. of Control*, 224 F.3d 359, 366 (5th Cir. 2000), *abrogated on other grounds by Cuvillier v. Taylor*, 503 F.3d 397, 401 (5th Cir. 2007).

The primarily disputed element in the present case is the second – whether Phyllis Harris' speech involved a matter of public concern. Whether the speech at issue in a First Amendment case is a matter of public concern is a legal question. *Kennedy*, 224 F.3d at 366. While there are multiple tests to determine whether speech is of public concern, the Fifth Circuit generally employs the "content-form-context test" (also known as the "*Connick* test," *see infra*). Under

7

this test, "whether an employee's speech addresses a matter of public concern must be determined by the content, form, and context of a given statement, as revealed by the whole court record." *Id.* (quoting *Connick v. Myers*, 462 U.S. 138, 147-48 (1983)).

As the plaintiffs note, the Fifth Circuit also recognizes cases of "mixed speech." The court has stated, "The existence of an element of personal interest on the part of an employee in the speech does not prevent finding that the speech as a whole raises issues of public concern." *Dodds v. Childers*, 933 F.2d 271, 273 (5th Cir. 1991). In a mixed speech case, the court is "bound to consider the *Connick* factors of content, context, and form, and determine whether the speech is public or private based on these factors." *Teague v. City of Flower Mound*, 179 F.3d 377, 382 (5th Cir. 1999). In *Kennedy v. Tangipahoa Parish Library Bd. of Control, see supra*, the Fifth Circuit examined the history of its mixed speech rulings and arrived at three principles about which a court should be mindful in a mixed speech case. The court stated:

> Having thus canvassed our mixed speech precedent, we discern three reliable principles. First, the content of the speech may relate to the public concern if it does not involve solely personal matters or strictly a discussion of management policies that is only interesting to the public by virtue of the manager's status as an arm of the government. If releasing the speech to the public would inform the populace of more than the fact of an employee's employment grievance, the content of the speech may be public in nature. Second, speech need not be made to the public, but it may relate to the public concern if it is made against the backdrop of public debate. And third, the speech cannot be made in furtherance of a personal employer-employee dispute if it is to relate to the public concern.

*Kennedy*, 224 F.3d at 372 (internal citations omitted).

The plaintiff in *Kennedy* was a former library supervisor whose employment was terminated after she wrote a letter to the library director and board of control about her concerns for the lack of security at the defendant's facilities. *Id.* at 362. The plaintiff's concerns arose when a fellow library employee was attacked and brutally raped while alone at work. *Id.* By the

8

*Kennedy* defendant's own admission, "the crime sparked intense media scrutiny and gossip." *Id.* at 361. "Speech made against the backdrop of ongoing commentary and debate in the press involves the public concern." *Id.* at 373.

Unlike the *Kennedy* plaintiff, Phyllis Harris did not engage in speech against the backdrop of public debate. Indeed the plaintiff has made no allegations to that effect much less directed the court to evidence of an ongoing public discussion regarding lack of due process in the school system. The fact that matters regarding due process *could* be of interest to the public does not help Mrs. Harris. "All speech arising from 'mixed motives' . . . is not automatically protected; the speaker must have spoken *predominantly* 'as a citizen' to trigger First Amendment protection." *Dodds*, 933 F.2d at 274 (quoting *Thompson*, 901 F.2d at 465-66) (emphasis in original). The plaintiff cannot sincerely argue that her speech in defense of her son was made *predominantly* in her capacity as a citizen. The record is clear that Harris' dispute with her employer was personal, and her speech was motivated by her personal interest in the matter. The speech, therefore, does not trigger First Amendment protection.

Even if the court were to assume that Harris' speech is protected by the First Amendment, the court nevertheless finds that the plaintiff has failed to establish a causal connection between her allegedly protected conduct and her termination, i.e., the fourth *Connick* factor. The record reveals that the action Harris took in support of her son did not motivate Roye's decision to dismiss her. It is uncontested that Roye's initial action was to change Harris' job from secretary to teaching assistant – not to terminate her. The defendants contend that this change in position was for the purpose of keeping Harris from having easy access to administrative computers. It is unclear as to whether this change in position constituted a

9

demotion, and the court is not charged with a duty to scour the record to make this determination. *See Jones v. Sheehan, Young & Culp, P.C.*, 82 F.3d 1334, 1338 (5th Cir. 1996) (stating that a court, when ruling on a summary judgment motion, has no duty to survey the entire record in search of evidence to support the nonmovant's opposition). The record does reveal that Roye did not *terminate* Harris' employment until Harris engaged in clearly insubordinate behavior, calling Roye a liar. No causal connection exists between Harris' allegedly protected speech and her termination. For the foregoing reasons, the plaintiff's First Amendment claim must fail.

*Interference with Employment Contract*

Phyllis Harris also brings a claim against Roye individually for tortious interference with her employment contract. This claim must fail. "A party to a contract cannot be charged with interfering with his own contract." *Knight v. Sharif*, 875 F.2d 516, 526 (5th Cir. 1989). While it is true that "to maintain the privilege, [the defendant] must be acting within the scope of [his] authority and without bad faith," the plaintiff has set forth no evidence that Roye acted in bad faith. *Courtney v. Glenn*, 782 So. 2d 162, 165 (Miss. App. 2000).

## Conclusion

In accordance with the foregoing analysis, the court finds no genuine issue of material fact in this case. The defendants are, therefore, entitled to judgment as a matter of law, and their summary judgment motion shall be granted. A separate order in accord with this opinion shall issue this day.

This, the 30th day of April, 2010.

*/s/ Neal Biggers*
**NEAL B. BIGGERS, JR.**
**SENIOR U.S. DISTRICT JUDGE**